**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

JOHN B. PICCHI             :

           Plaintiff,     :

                  :        Civil Action No. 06 - 193 (KAJ)

v.                       :

                  :

SUMMIT NORTH MARINA, Inc.   :

            Defendant.   :

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**HOLLSTEIN KEATING CATTELL
JOHNSON & GOLDSTEIN, P.C.**
Lynne M. Parker, Esq. (Bar No. 2811)
1201 N. Orange Street, Suite 730
Wilmington, Delaware 19801
Phone #: (302) 884-6700
Fax #: (302) 573-2507
Attorneys for Plaintiff
John B. Picchi

Date: October 2, 2006

Of Counsel:

Edward V. Cattell, Jr. Esq.
Patrick J. McStravick, Esq.

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................1
STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING.........1
SUMMARY OF THE ARGUMENT ...................................................1
STATEMENT OF FACTS .................................................................2
ARGUMENT.....................................................................................7
STANDARDS FOR LACHES ..........................................................7
POINT I ............................................................................................8

        THE PLAINTIFF'S DELAY HERE WAS EXCUSABLE............8

POINT II ...........................................................................................11

        THE DEFENDANT HAS NOT BEEN PREJUDICED BY THE
        DELAY ........................................................................11

POINT III...........................................................................................16

        TO THE EXTENT THAT ANY MINOR PREJUDICE MAY
        EXIST, ITS DETERMINATION CANNOT BE
        CONFIRMED UNTIL THE DEFENDANT HAS
        PROVIDED RULE 26 DISCLOSURES ...........................16

POINT IV...........................................................................................17

        DEFENDANT'S COUNTERCLAIM BASED ON THE
        PRESENCE OF THE VESSEL AT THEIR FACILITY
        BELIES THE ALLEGATION THAT THE
        DEFENDANTS ARE PREJUDICED because OF THE
        DELAY ........................................................................17

CONCLUSION...................................................................................18

## TABLE OF AUTHORITIES

### FEDERAL CASES

*AT&T v. F/V SHINNECOCK*, 1991 U.S. Dist LEXIS 10070 (D.N.J. 1991 Fisher, J. Civil No. 89-5387) ................................................................................ 14-15

*Baczor v. Atlantic Richfield Co.*, 424 F. Supp. 1370, 1380 (E.D. Pa. 1976) ....................12

*Brooks v. Hess Oil Virgin Islands Corp.*, 809 F.2d 206, 208 (3d Cir. 1987) ......................7

*Hill v. Bruns & Co.*, 498 F.2d 565, 569 (2d Cir. 1974) .....................................................15

*Lasseigne v. Nigerian Gulf Coast Co.*, 397 F.Supp 465, 474 (D. Del. 1975) ....................7

*Pierre v. Hess Oil Virgin Islands Corp.*, 624 F.2d 445, 450 (3d Cir. 1980) ......................7

*Sun Pipe Line and Atlantic Pipeline Corp. v. M/T LOTTI SWANN,* 1997 U.S. Dist. LEXIS 19739. (E.D. Pa 1997 - Pollack, J. Civil Action No. 96-4297) ..10, 11, 12

*The Sea Gull*, 21 F. Cas. 909, 910 (C.C. Md. 1865 ...........................................................9

*Walck v. Discavage,* 741 F.Supp.88, 90 (E.D. Pa. 1990) ...................................................9

*Wilkes v. H. M. Wrangell & Co.*, 293 F. Supp. 522, 527 (D. Del. 1968) ............... 8, 12-14

### FEDERAL STATUTES

28 U.S.C. §1333 ....................................................................................................................1

### FEDERAL RULES OF CIVIL PROCEDURE

Fed.R.Civ.P. 9(h) ...................................................................................................................1

Fed.R.Civ.P. 56 .....................................................................................................................1

## INTRODUCTION

Plaintiff, John B. Picchi, through his attorneys Hollstein Keating Cattell Johnson & Goldstein, P.C., hereby responds to the defendant's motion to dismiss as follows, and respectfully requests that the Court deny the motion for the reasons stated herein.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is an admiralty and maritime action within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This court has subject matter jurisdiction pursuant to 28 U.S.C. §1333.

This action was commenced by John B. Picchi, in admiralty, to recover for the loss of his vessel, and associated monetary damages, due to the negligent acts of the defendant, Summit North Marina.

This matter is in its infancy: plaintiff has turned over its Rule 26 disclosures, but as yet has still not received the defendant's disclosures, and no other discovery has commenced.

However, notwithstanding its failure to provide Rule 26 disclosures, the defendant has raised the affirmative defense of laches[1] and requested that the Court dismiss the action[2] on that basis.

## SUMMARY OF THE ARGUMENT

Defendant's Motion to Dismiss raises the following Arguments:

- that plaintiff's action was filed three years after the incident;

---

[1] It must be noted that the defendant did not raise laches as an affirmative defense, but rather, raised "the statute of limitations." See docket No. 5, defendant's Answer with Counterclaims. Defendant's motion, for the first time, raises laches as an affirmative defense.

[2] Although not stated in the defendant's brief, it appears that the court should review this matter under Fed.R.Civ.P. 56, as the issues of prejudice and inexcusable delay are issues of fact to be determined from the record based on affidavits, etc. To the extent that there are issues of fact as to whether there is prejudice, defendant's motion must be denied.

-     that if this were a Delaware state law action the applicable statute of limitations would have been two years;

-     that the excess of one year in delay in bringing this action is inexcusable and therefore a laches defense is applicable;

Plaintiffs raise the following arguments below:

-     the plaintiff's delay was excusable as not the result of his actions but rather as a result of the negligence of his attorney(s);

-     that there is absolutely no evidence of prejudice at all to this defendant, but to the contrary, there is ample evidence that all or virtually all of the key information is still extant and witnesses relevant to this action are available;

-     that any finding that this defendant is in fact prejudiced can not be made until, at the earliest, after the defendant produces its Rule 26 disclosures, and the plaintiff has had an opportunity to conduct limited discovery as to the availability and memory of witnesses, and the availability of documents;

-     that the defendant's cross-claims, which are part of the plaintiff's damages, are based on the same set of facts and are further based on the vessel being at the defendant's location for the past three (3) years, making defendant's allegations of prejudice illusory and disingenuous.

## **STATEMENT OF FACTS**

The incident giving rise to this suit occurred on February 4, 2003. On February 4, 2003, plaintiff's vessel, the CHRISTINA MARIE, sank at its berth at the Summit North Marina. See Picchi Certification, para 3.[3]

On that same date, plaintiff's wife was contacted by an employee of Summit North Marina, Janice Trala, who told plaintiff's wife the vessel was sinking. Despite placing the call, defendant took no action to stop this sinking. See, Picchi Certification, para 4. Mr. Picchi

---

[3] The Certification of John B. Picchi, dated September 28, 2006, is being filed concurrently with this Memorandum and is hereafter referred to as the "Picchi Certification".

arrived at the marina too late to prevent the sinking. The vessel was under water in its slip when he arrived.

After the vessel was raised, it was clear that the incident occurred because ice had been pushed through the transom. There was large hole in the 1" mahogany wood transom, 5 ½ inches high and 7 ½ inches long. See Picchi Certification, para 5.

It is alleged by the plaintiff that defendant's employee was utilizing a vessel as a makeshift icebreaker to break ice in the channel in the Marina. This vessel pushed ice into the transom of plaintiff's vessel, the CHRISTINA MARIE, punching a whole in the transom. See Complaint, D.I. No. 1.

Plaintiff has been informed by other slip owners, as well as the salvage divers, that the young man breaking ice at the Marina with an improvised ice-breaker, was pushing sheets of ice into the berthed vessels all over the marina. See Picchi Certification, para 6.

Plaintiff immediately retained an attorney, Angelo Falciani, Esquire, and put the Marina on notice of his intent to hold them responsible. See Picchi Certification, para 7.

Mr. Falciani exchanged correspondence with Summit North Marina, its attorneys, and its insurers in March through May of 2003. See Picchi Certification, para 8.

Attached as Exhibit "A" to the Picchi Certification is Mr. Falciani's March 25, 2003 letter informing Summit of his representation of plaintiff, and telling them to put their insurance carrier on notice of his representation. See Picchi Certification, para 9.

Attached as Exhibit "B" to the Picchi Certification is Mr. Falciani's letter to Attorney Darrel Baker on May 12, 2003, giving Summit's insurance carrier permission to inspect and survey the vessel. See Picchi Certification, para 10.

At that time, plaintiff believed that Mr. Falciani was representing him with respect to his claim, and that he was either going to refer the case to Delaware counsel, or file suit on his behalf if the matter could not be resolved. See Picchi Certification, para 11.

In September of 2005, Mr. Falciani informed plaintiff, under his ethical obligations as an attorney, that he had (in his opinion) failed to file the suit in Delaware, or have the suit filed in Delaware, within what he believed was the applicable "statute of limitations". See Picchi Certification, para 12.

At that time, based upon Mr. Falciani's representation, plaintiff sought an attorney to bring a malpractice action against Mr. Falciani. Plaintiff retained Daniel S. Sweetser, Esquire to pursue a possible malpractice action. See Picchi Certification, para 13.

Mr. Sweetser informed plaintiff that since this was a Maritime action, the "statute of limitations" did not apply *per se*, and that before he could proceed with a malpractice action, Mr. Picchi would need to proceed in admiralty to determine the viability of the suit under the admiralty laches doctrine. If there was no prejudice, and the action was decided on its merits, there would be no malpractice. See Picchi Certification, para 14.

Plaintiff then consulted a Delaware Maritime attorney, who indicated that he could not take plaintiff's case due to a potential conflict. The attorney referred plaintiff to Edward V. Cattell, Esquire and Lynne Parker, Esquire at Hollstein Keating Cattell Johnson & Goldstein, P.C., plaintiff's counsel herein, who agreed to pursue the matter on plaintiff's behalf. See Picchi Certification, para 15. Hollstein Keating reviewed the file and drafted and filed the Complaint in March of 2006. See Picchi Certification, para 16.

After the court issued its Case Management Order, plaintiff served his Rule 26 disclosure on defendant. Attached as Exhibit "1" to the <u>McStravick</u> Certification[4], para. 4, is a copy of the Rule 26 Disclosure of the plaintiff. This document identifies multiple witnesses from every stage of the incident (i.e. from before the incident, to the raising of the vessel, to the oil abatement, to governmental involvement) by name with addresses and telephone numbers[5].

The Rule 26 disclosure also identifies specific employees of the defendant that have knowledge as to the plaintiff's allegations.

Also, the Rule 26 response indicates the identity of potential witnesses (other slip owners) whose contact information is in the possession of the defendant, but has not been turned over to date since defendant has not made its Rule 26 disclosures as required by Rule 26.

Further, within the Rule 26 disclosures, plaintiff produced several hundred pages of documents, including:

> 1.    A complete schedule of losses, which includes pre- and post- incident surveys (with photographs), reports from government agencies, and all invoices and bills associated with the loss;
>
> 2.    Color photos of vessel pre- and post- incident;
>
> 3.    The complete post-incident Marine Survey Report with color photos;
>
> 4.    Coast Guard Reports related to the incident, and the oil abatement efforts;
>
> 5.    Summit invoices and checks related to the raising of the vessel and cleanup;

---

[4]  The Certification of Patrick McStravick, is being filed contemporaneously with this Memorandum, and is hereafter referred to as the "McStravick Certification".

[5]   For instance, the plaintiff's Disclosures identify Ms. Terry Boos of Guardian, the contractor that undertook the oil abatement, and provide full contact information for Ms. Boos, as well as Guardian's entire file, report, and application to the Coast Guard for payment.

      6.    Full report of Guardian, the contractor who undertook the oil clean up.

As indicated above, defendant has turned over no information, documents, names, addresses, or any of the information required in the Rule 26 Disclosure Statement at all, despite this court's Order requiring these disclosures. See <u>Scheduling Order</u>, D.I. No. 12. Defendant has not even turned over documents to support its alleged counterclaim for storage charges.

Defendant's employees are the key witnesses and actors in this matter. See <u>McStravick Certification</u> Exhibit "1", <u>Plaintiff's Rule 26 Disclosures</u>, at section 1(b)(i.) and (ii). Janice Trala was the defendant's employee who notified all the relevant entities and people who responded to this incident. Mr. David Ayers was the defendant's employer who is believed to have operated the vessel that caused the damage. See <u>Complaint</u>, D.I. No. 1.

Plaintiff's counsel wrote to the defendant, on September 7 and again on September 20, 2006 requesting the Rule 26 responses. See <u>McStravick Certification</u>, Exhibit "2", September 7 and September 20, 2006 correspondence, para. 5. The September 20 letter specifically requested that the materials be provided in order to avoid an objection to this motion based upon the missing disclosures, but the defendant has still not made the disclosures[6]. See <u>McStravick Certification</u>, para. 5. This September 20, 2006 letter, requesting immediate production of Rule 26 disclosures, also identified key witnesses and documents, which information is required before any possible determination of laches could be made to the detriment of the plaintiff.

Plaintiff's attorneys have confirmed the availability and memory of the some of the potential witnesses, including J.R. Rinker, a diver who worked on raising the vessel; Jack

---

[6]    Plaintiff's counsel was contacted by defense counsel and informed that Mr. Casarino, defendant's counsel, is out of town until October 2, 2006. This unfortunately means that there is no chance that the plaintiff could have obtained the disclosures until after its deadline to respond to this motion.

Horner, the marine surveyor who surveyed the vessel post-incident; Terry Boos, from Guardian, who did the oil clean-up; and James McCarthy, of BoatUS, also involved in raising the vessel. See McStravick Certification, para. 3.

Finally, it should be noted that he defendant has had possession of the vessel on its property since the incident. This possession is the basis of the defendant's counterclaim. See McStravick Certification, para. 6.

## ARGUMENT

### STANDARDS FOR LACHES

The Third Circuit has stated that a delay in bringing suit on an admiralty claim is governed by the application of the doctrine of laches, not by any statute of limitations. *Brooks v. Hess Oil Virgin Islands Corp.*, 809 F.2d 206, 208 (3d Cir. 1987); *Pierre v. Hess Oil Virgin Islands Corp.*, 624 F.2d 445, 450 (3d Cir. 1980).

The court in *Lasseigne v. Nigerian Gulf Coast Co.*, 397 F.Supp 465, 474 (D..Del. 1975) set forth the requirements of laches, and the relative burdens, as follows:

> For a defense of laches to be successfully invoked, the Court must find both an inexcusable delay in instituting suit and prejudice resulting to the defendant from such delay. *Gruca v. United States Steel Corp.*, 495 F.2d 1252, 1258 (3d Cir. 1974); *Burke v. Gateway Clipper*, 441 F.2d 946, 949 (3d Cir. 1971). *Accord, Churma v. United States Steel Corp.*, 514 F.2d 589 (3d Cir. 1975). Where there is inexcusable delay, but no finding of prejudice to the defendant, laches cannot be invoked. *Gruca v. United States Steel Corp., supra* at 1260; *Claussen v. Mene Grande Oil Company, supra* at 113; *Wilkes v. H. M. Wrangell & Co.*, 293 F. Supp. 522, 527 (D. Del. 1968).
>
> If the analogous state statute of limitations has not expired, defendant bears the burden of proving both elements of laches. Where, as here, that statute has expired, the plaintiff bears the burden on *both* inexcusable delay and prejudice (though he avoids laches by carrying the burden on either). *Gruca v. United States Steel Corp., supra* at 1259; *Burke v. Gateway Clipper, supra* at 949 n.24 The record alone may be sufficient to rebut the presumption

of prejudice and, in effect, satisfy plaintiff's obligation with respect to laches.
*Wilkes v. H. M. Wrangell & Co., supra* at 527.

Thus, there must be both a finding of an inexcusable delay, and prejudice to the

defendant, and often the record alone can be sufficient to rebut the presumption of prejudice.

*Wilkes v. H. M. Wrangell & Co.*, 293 F. Supp. 522, 527 (D. Del. 1968) (stating that

"…inexcusable delay in instituting an action in admiralty, without more, is not sufficient to bar

it. Significant prejudice resulting from the passage of time must also be shown.")

It is respectfully submitted that here, there is affirmative evidence of both an excusable

delay and a complete lack of prejudice to the defendant.  On these facts, the motion to dismiss

based on the doctrine of laches must be denied.

## POINT I

### THE PLAINTIFF'S DELAY HERE WAS EXCUSABLE

As the facts above show, the plaintiff, Mr. Picchi, acted immediately to procure counsel

and to put the defendant on notice of his intention to bring a claim for the loss of his vessel and

related damages against them.  His attorney at the time, Mr. Falciani, had correspondence with

the defendant within a month, requesting that they put their carrier on notice.  Further, the

defendant and their insurance carrier were given an opportunity to survey the vessel in May of

2003.  Defendant has clearly been aware, since the vessel sank in 2003, of Mr. Picchi's

intentions to bring claims for the defendant's negligence.  See Picchi Certification, para. 7-11,

and Exhibits "A" and "B" thereto.

Further, as noted above, the defendant's employees are the prime witnesses and actors

involved in the incident and in the clean up.  As such, they were acutely aware of the incident,

and the plaintiff's intention to seek claims.

Mr. Falciani failed to file this action within the Delaware Statute of Limitations. He did not advise plaintiff of his failure until September of 2005, after the statute had expired. To his credit, Mr. Falciani advised plaintiff that he believed he had committed malpractice. Mr. Picchi promptly sought an attorney to represent him in the malpractice action. This took some reasonable amount of time. Mr. Picchi retained attorney David Sweetser, who reviewed the file and researched the statute of limitations issue. Mr. Sweetser then advised Mr. Picchi that it was not clear that the action was barred because admiralty law applied a different standard (laches) than Delaware law. Mr. Sweetser assisted Mr. Picchi in locating maritime counsel, and two attorneys were consulted before present maritime counsel was retained.

Present maritime counsel received and reviewed the file, researched the laches issue and filed suit on Mr. Picchi's behalf in March, 2006.

There has been no delay at all on Mr. Picchi's part. He promptly retained Mr. Falciani. He then acted promptly and diligently to retain Mr. Sweetser and then Hollstein Keating. The only delay in this matter from May, 2003 to September, 2005 is a result of Mr. Falciani's neglect. This neglect of counsel should not be charged to plaintiff, Mr. Picchi.

In *Walck v. Discavage,* 741 F.Supp. 88, 90 (E.D. Pa. 1990), the improper filing of an action in Maryland court tolled the general three year maritime statute of limitations on personal injuries on equitable grounds. In *Walck*, the incident occurred in Indian River Inlet, and plaintiff's attorney filed in Maryland, believing jurisdiction was appropriate. When the action was dismissed, plaintiff re-filed in federal court. The district court in *Walck* held that equity and the desire to determine actions on the merits favored a tolling of the statute so as to permit the

adjudication of plaintiff's claims[7].  Plaintiff's diligence in pursuing perceived rights was noted as a basis for the tolling.  *Walck*, 741 F.Supp at 91-92.

Similarly, here the plaintiff immediately notified the defendant of the incident, and retained counsel.  When the prior attorney's failure became evident, plaintiff again immediately sought appropriate counsel.  Any delay was not caused by this plaintiff, but was due to the failure of counsel.  Mr. Picchi should not be punished for these errors, and here, like in *Walck*, equity and the humane and liberal character of proceedings in admiralty should control in order to have this matter decided on its merits.

Similarly, in *Sun Pipe Line and Atlantic Pipeline Corp. v. M/T LOTTI SWANN,* 1997 U.S. Dist. LEXIS 19739. (E.D. Pa 1997 - Pollack, J. Civil Action No. 96-4297), a copy of which is attached hereto, the Court recognized that notice was critical to the determination that laches should not be applied to bar a claim.

In *Sun Pipe*, the defendant Christiana's vessel the M/T LOTTI SWANN, allided with a tanker ship berthed at the Fort Mifflin dock on October 30, 1993. The allision destroyed 200 feet of catwalk on the dock, which was owned by Sun Pipe Line Co. and Atlantic Pipeline Corporation. *Sun Pipe*, 1997 U.S.Dist. LEXIS *2-3.

On November 1, 1993, Sun Pipe's dock manager wrote to Christiana to notify them that Sun Pipe intended to hold Christiana responsible for all damages.  Sun Pipe, however, replaced its manager, and the new manager did not know the procedure for certifying claims.  Because of this oversight, a claim was not immediately sent to Christiana. *Sun Pipe*, 1997 U.S.Dist. LEXIS *2-3.

---

[7]   *Walck* cited *The Sea Gull*, 21 F. Cas. 909, 910 (C.C. Md. 1865) ("it better becomes the humane and liberal character of the proceedings in admiralty to give than to withhold the remedy.")

In August of 1995, Christiana stopped operating as a provider of marine transportation services due to financial problems.  On November 10, 1995, Sun Pipe, having realized its failure to submit its claim, sent a claim statement to Christiana for $ 198,682.75.  In a letter dated March 22, 1996, Christiana denied any liability to Sun Pipe Line on the grounds that the Pennsylvania statute of limitations had expired on October 30, 1995, 11 days before the claim was sent. On June 10, 1996, Sun Pipe brought an action in admiralty for breach of contract and negligence. *Sun Pipe*, 1997 U.S.Dist. LEXIS *2-3.

The *Sun Pipe* court found the following: (1) the delay was due to an administrative mix-up; (2) the defendant was on notice of the claim from the outset; and (3) the claim was filed promptly (seven months) after the rejection on statute grounds.  Therefore, the Court noted, the delay was excusable and not sufficient to invoke laches.  The *Sun Pipe* court also rejected Christiana's prejudice argument, noting that its allegations of financial trouble had nothing to do with the action, and that no other evidence of prejudice was shown.  It stated that "…Christiana has not established that its effort to investigate these issues has been actually prejudiced." *Sun Pipe*, 1997 U.S.Dist. LEXIS *5-7.

Here, the "filing" error (as opposed to "administrative error" in *Sun Pipe*) was that plaintiff's lawyer, who had put the defendant on notice of the intention to file a claim, failed to file.  The delay of a year in filing this action, like the seven months in Sun pipe, is excusable on these facts, and plaintiff's claim should be permitted to go forward.

## POINT II

### THE DEFENDANT HAS NOT BEEN PREJUDICED BY THE DELAY

As to the second prong, prejudice, there is ample evidence that there has been no prejudice to the defendant.

Defendant's motion makes two vague allegations of prejudice, which are completely unsupported by any evidence whatsoever[8]. The two allegations are that memories " . . .have **likely** dimmed . . ."(emphasis added), and that defendant does not have access to lost or subsequently destroyed records. Defendant does not identify whose memory has likely dimmed, or provided an example of such. Plaintiff's counsel has personally spoken to the several witnesses who remember this incident, including the plaintiff, divers involved in the recovery efforts, and a post-incident surveyor, all of whom indicate they remember the incident and can testify.

As to records, the Plaintiff has turned over hundreds of pages of documents, including surveys, photographs, reports of the Coast Guard and Guardian. Defendant has not specifically identified any records that it believes have been lost or destroyed, nor has it identified how the loss of any such item prejudices it. Further, given the fact that plaintiff's vessel remains sitting in defendant's yard (see Section IV, infra) it seems highly unlikely that defendant could have forgotten that this claim remained unresolved.

It is respectfully submitted that the evidence disclosed by plaintiff alone, including the names and whereabouts of witnesses, and the documents, reports, surveys and records, established that there has been and can be no prejudice to this defendant in defending its case.

---

[8]  While it is true that most courts in the Third Circuit follow the holding that post-statute claims have a presumption of prejudice requiring plaintiff to prove the lack of prejudice, the courts in practice recognize that prejudice must be actual, and that the defendant is the one in the better position to identify perceived prejudice. As such, the utter lack of any identification of tangible evidence of prejudice should inform this court's findings on the issue of prejudice. See e.g. *Baczor v. Atlantic Richfield Co.*, 424 F. Supp. 1370, 1380 (E.D. Pa. 1976)("Defendant contends that plaintiff has the burden to disprove both elements in order to negate the defense. Although there is dictum supporting defendant's position, courts which have directly faced the issue have rejected such a contention."); *Sun Pipe Line and Atlantic Pipeline Corp. v. M/T LOTTI SWANN*, 1997 U.S. Dist. LEXIS 19739. (E.D. Pa 1997 - Pollack, J. Civil Action No. 96-4297)("Furthermore, Christiana has not established that its effort to investigate these issues has been actually prejudiced.").

The opinion of the Court in *Wilkes v. H.M. Wrangell & Co.,* 293 F. Supp. 522 (D.Del. 1968), is instructive on the nature and scope of prejudice that must be shown to invoke laches. In *Wilkes*, plaintiff alleged that on January 25, 1961, he was injured when he slipped and fell while discharging cargo from the S. S. CORONA, when it was moored at a pier in the Wilmington Marine Terminal at Wilmington, Delaware. Plaintiff alleged unseaworthiness of the vessel.

Plaintiff Wilkes filed his suit on April 21, 1964, a little over three years after the incident, although it was not until about September, 1965, when defendants were notified of the pendency of the action. The *Wilkes* court held that the deaths of several potentially key witnesses did not constitute prejudice to the defendant:

> "The presumption of prejudice which libelant is required to rebut in the instant case is rebutted by the record. It is true that deaths of witnesses whose testimony may have been important to the defense have occurred after the period fixed by the statute of limitations had run. Pederson, master of the S. S. Corona, died on March 17, 1966. Dr. Jones, who operated on libelant for his alleged injuries, died on October 8, 1967. Dutton, the foreman or supervisor on the job on which libelant alleges he was injured, died in the summer of 1966. . . . With knowledge that respondents were faced with a claim which was then more than four-and-one-half years old, it behooved respondents to investigate with dispatch all facts surrounding the claim. With diligence the attorneys for respondents could have taken the depositions of the three persons whose testimony respondents claim was lost by reason of libelant's delay." *Wilkes*, 293 F.Supp at 527.

Thus, the deaths of the captain of the vessel, the doctor who operated on the plaintiff, and the supervisor on the vessel were not enough to prejudice the defendant, in part because once the defendant knew of the action, it should have taken care to preserve evidence. The *Wilkes* court further noted that even if these people were alive, there was no indication that they had relevant knowledge of the events, and therefore there loss was not prejudicial:

"The first indication that respondents had that libelant was making any kind of a claim against them occurred in September, 1965. Before this, respondents argue, they had no occasion to investigate the circumstances which gave rise to the claim. Since, however, no ship's personnel witnessed the alleged accident, an earlier inquiry of them would have developed no eye-witness testimony as to its occurrence. The ship's personnel may have had relevant knowledge of conditions of the vessel pertaining to the asserted injury, but it cannot be assumed that such evidence is not still available.

Respondents offer no proof that the memories of persons having knowledge of relevant facts have been dimmed with the passing of time; indeed, respondents point to no one who is informed about the accident.

Nor does the record contain any suggestion that records of a significant kind have been lost or destroyed during the period of libelant's delay. The log of the S.S. Corona is still in existence but contains no entries or information concerning the accident.

The record in its totality indicates that if libelant had sued within the statutory period respondents could have discovered nothing which was not at their disposal after September, 1966, when they were informally notified that the action had been begun. Any presumption of significant prejudice from libelant's delay is therefore affirmatively rebutted by the record." *Wilkes*, 293 F.Supp at 527-528.

Plaintiff's here have produced reports, photos and surveys contemporaneous with the key incidents forming the basis of this action, and further, have identified multiple potential witnesses. Like the defendants in *Wilkes*, the defendants here have produced only vague assertions of potentially dimmed memories and possibly lost or destroyed documents. Further, even more so than in *Wilkes*, the defendants here were on notice from the beginning, and had the opportunity to preserve evidence regarding a claim they knew was going to be made. As in *Wilkes*, the record here establishes that there is no prejudice to these defendants.

Similarly, in *AT&T v. F/V SHINNECOCK*, 1991 U.S. Dist LEXIS 10070 (D.N.J. 1991 Fisher, J. Civil No. 89-5387)[9], the court held that the vessel in question being sold twice, the crew being dispersed, unknown whereabouts of the Captain, and missing logs were not enough to prejudice the defendant once placed on notice.

Citing a Second Circuit case, *Hill v. Bruns & Co.*, 498 F.2d 565, 569 (2d Cir. 1974), the court noted that a defendant who has been on notice since the outset cannot complain about evidence it allowed to be lost or destroyed:

> " Defendants in this action were placed on notice of plaintiff's claim as early as February 5, 1986, less than five months after the hit and well within any of the statutes of limitations proposed for analogy by either party. The court in <u>Hill</u> also ruled, with respect to notice: "[Defendant] had notice within . . . the expiration of the analogous statute of limitations, and it cannot claim prejudice for having let evidence slip away after that date." <u>Id., at 569.</u> See also <u>Gutierrez v. Waterman S. S. Corp.</u>, 373 U.S. 206 (1963) (holding no prejudice when witnesses and records had been available to defendant and defendant had not taken advantage of opportunity); [citation omitted] . . . Defendants were placed on notice within five months of the hit, after a period of investigation by plaintiff. **Defendants cannot now claim prejudice from a lack of evidence that they, themselves, have allowed to vanish since the time of that notification.** (Emphasis added). *AT&T*, 1991 U.S.Dist. LEXIS at *7.

The *AT&T* court went on to note that the plaintiff had managed to find the captain and crew, and that defendant admitted it had never searched for them. *AT&T*, 1991 U.S.Dist. LEXIS at *7.

Here, the defendant has been on notice since the beginning of the plaintiff's intentions, and has the opportunity to preserve any evidence it felt was necessary.  Plaintiff has produced the

---

[9]  A copy of this unpublished opinion is attached hereto.

names of the witnesses which permits the defendant to identify these witnesses and defend itself. Defendant is totally unable to point to any prejudice. Defendant's laches claim must be denied.

## POINT III

### TO THE EXTENT THAT ANY MINOR PREJUDICE MAY EXIST, ITS DETERMINATION CANNOT BE CONFIRMED UNTIL THE DEFENDANT HAS PROVIDED RULE 26 DISCLOSURES

To the extent that this Honorable Court believes that there is inexcusable delay, and that there may be some prejudice to this defendant based on this record, the plaintiff respectfully submits that this Honorable Court should stay the disposition of this motion until such time as plaintiff is provided basic discovery, in the form of disclosures, and potentially a few short depositions.

At this juncture, defendant has made only vague allegations of prejudice, and has not provided information on the availability of documents or witnesses, and particularly, two key employees, Ms. Trala and Mr. Ayers. Defendant has not identified what witnesses or testimony are not available. Plaintiff may also need to subpoena insurance adjusters to obtain extant files, if the defendant has not or refuses to do so, in order to determine if in fact any documents are missing, as is alleged without support.

Plaintiff believes this record is sufficient to deny this motion outright, as defendant has identified sufficient information to enable the defendant to defend itself on these claims. However, to the extent the court disagrees, plaintiff submits that the motion should be denied without prejudice to be renewed, if at all, following the discovery outlined above and in the plaintiff's September 20 letter to the defendant.

## POINT IV

## DEFENDANT'S COUNTERCLAIM BASED ON THE PRESENCE OF THE VESSEL AT THEIR FACILITY BELIES THE ALLEGATION THAT THE DEFENDANTS ARE PREJUDICED BECAUSE OF THE DELAY

The defendant has had the plaintiff's vessel at its property and within its control since the incident.  Defendant has filed a counterclaim for storage fees.  Defendant makes these claims, and at the same time alleges that memories have dimmed and documents may have been lost.  What defendant expects this court to believe is that despite the presence of their (substantial) claim for a storage fee, and the presence of the plaintiff's vessel (analogous to the proverbial 600 pound gorilla) in their yard, these defendants discarded key documents and information which would potentially serve to rebut the obvious defense of the plaintiff to these storage charges - that they were caused by defendant's negligence.

The plaintiff's defense to the storage charges, based on the negligence of the defendants, is not precluded by any statute.  If it is defendant's contention that they discarded key documents relevant to an ongoing contract dispute, then they should not be permitted to hide behind the lack of access to those documents in support of laches.

Further, the ongoing contract dispute itself and the presence of the vessel on defendant's property are evidence of why laches is simply inappropriate here.  This matter is still "fresh" to both parties.  Both parties have claims about a vessel which is still in the defendant's possession

## CONCLUSION

For the reasons set forth above, plaintiff John B. Picchi respectfully requests that this

Honorable Court deny the defendant's motion to dismiss.

**HOLLSTEIN KEATING CATTELL
JOHNSON & GOLDSTEIN, P.C.**

_____/s/Lynne M. Parker_____
Lynne M. Parker, Esq. (Bar No. 2811)
1201 N. Orange Street, Suite 730
Wilmington, Delaware 19801
Phone #: (302) 884-6700
Fax #: (302) 573-2507
Attorneys for Plaintiff
John B. Picchi

Of Counsel:

Edward V. Cattell, Jr. Esq.
Patrick J. McStravick, Esq.

Service: **Get by LEXSEE®**
Citation: **1991 US Dist LEXIS 10070**

*1991 U.S. Dist. LEXIS 10070, \**

AMERICAN TELEPHONE & TELEGRAPH CO., Plaintiff, v. F/V SHINNECOCK, etc., et al., Defendants

Civil No. 89-5387 (CSF)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

1991 U.S. Dist. LEXIS 10070

July 16, 1991

**NOTICE: [\*1]**

NOT FOR PUBLICATION

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendants, a fishing vessel and two corporations, brought a motion to dismiss for laches in plaintiff communication company's admiralty in rem action that arose out of damage to an undersea transatlantic telephone cable.

**OVERVIEW:** After the communications company discovered a break in an undersea transatlantic telephone cable of which it was a part-owner, it sent letters in which it advised defendants of its suspicion that the fishing vessel was responsible for the damage. The letters also indicated the communications company's willingness to settle the claim out of court and noted the possibility of legal action. The communications company subsequently instituted an in rem action against defendants to recover for the damage to the cable. After extensive discovery, defendants filed a motion to dismiss the action on the ground of laches. The court concluded that, although there had been an inexcusable delay before the institution of the action, no prejudice resulted to defendants. The court found that, well within any applicable statutes of limitations, several letters had placed defendants on notice of the claim and the possibility of a lawsuit. The court also found that defendants could not claim prejudice for the loss of evidence for which they had not bothered to look.

**OUTCOME:** The court denied defendants' motion to dismiss the action on the basis of laches.

**CORE TERMS:** cable, laches, statute of limitations, notice, hit, prejudiced, rope, inexcusable delay, legal action, independant, adjuster, damaged, captain, vessel, notification, motion to dismiss, contractor, deposition, whereabouts, discarded, recovered, contacted, analogy, settle, crew

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Admiralty Law > Practice & Procedure > General Overview

Evidence > Inferences & Presumptions > Creation of Presumptions

Governments > Legislation > Statutes of Limitations > General Overview

*HN1* ⨁ In admiralty actions in which no federal statute of limitations is applicable, the time for bringing suit is governed by the equitable doctrine of laches. Laches is a flexible measure of time within which admiralty actions must be brought, and is exceeded only when a court finds there has been inexcusable delay in bringing the action which results in undue prejudice to the defendant. Courts often use the running of the relevant statute of limitations to create a presumption that a delay was inexcusable, and that the defendant has been prejudiced by the delay; if the statute has not run, the opposite is presumed. These statutes are not conclusive, however, for the relevant question is whether it would be inequitable, because of the delay, to enforce the claim. More Like This Headnote

Admiralty Law > Practice & Procedure > General Overview 

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses

*HN2* ⨁ In a laches case, when prejudice is alleged, the ultimate question is one of prejudice in fact, governed by the time of notification of the existence of a cause of action and the plaintiff's prompt prosecution of same. If a defendant had notice within the expiration of the analogous statute of limitations, it cannot claim prejudice for having let evidence slip away after that date. More Like This Headnote

**JUDGES:** Clarkson S. Fisher, United States District Judge.

**OPINION BY:** FISHER

**OPINION:** OPINION

This is an in rem action against F/V Shinnecock, American Original Corporation and Shinnecock, Inc. for damage done to an undersea transatlantic telephone cable ("TAT-4") owned in part by plaintiff, American Telephone & Telegraph ("AT&T"). Before the court is defendants' motion to dismiss this action for laches. For reasons stated below, this motion will be denied.

On September 10, 1985, TAT-4 was damaged approximately 60 miles off the coast of New Jersey. The cable originates in Tuckertown, New Jersey, where plaintiff first discovered the break. Plaintiff commenced an immediate investigation by sending an independant contractor on an aerial reconnaissance of the cable. The contractor observed seven fishing vessels, including the Shinnecock, over or near the cable. When the cut in the cable was located and repaired on September 26, 1985, the crew noted a tangle of broken wire and rope at the point of the break. Mr. Charles Wade, an AT&T employee, compared a section of the recovered rope to the ropes on board each of the seven vessels which had been sighted in the area of the cable. On November **[*2]** 8, 1985, Wade found identical rope aboard the Shinnecock. Wade immediately informed Jim Florant, American Original Corporation's fleet manager, of this finding.

Plaintiff subsequently informed Shinnecock, Inc. that plaintiff had concluded that it was the Shinnecock that contacted and damaged TAT-4 in a letter dated February 5, 1986. This letter advised defendants that plaintiff was in the process of calculating the total damages resulting from the break. The letter expressed plaintiff's desire to settle the issue, but noted the possibility of legal action.

On September 17, 1986, plaintiff's in-house attorney sent a letter to the independant adjuster who was investigating the claim on behalf of defendants. This letter indicated

Get a Document - by Citation - 1991 U.S. Dist. LEXIS 10070

Case 1:06-cv-00193-MPT    Document 17    Filed 10/02/2006    Page 24 of 30

Page 3 of 5

plaintiff's willingness to settle the claim out of court for $ 148,368, and again noted the availability of legal action. Another letter from plaintiff's attorney to the adjuster, dated June 5, 1987, stated that if the claim was not settled within two weeks, plaintiff would pursue a legal remedy for damages estimated at $ 400,000. That attorney stated upon deposition that the case was fully ready for trial at this date. Although defendants had also investigated **[*3]** this claim, they never admitted or denied liability for the cable break.

On April 12, 1989, plaintiff's counsel in this matter contacted defendants, restating plaintiff's claim and requesting disposition of the matter. Having received no response from defendants, plaintiff commenced this action on December 27, 1989. Defendants, after extensive discovery, now move for dismissal of the action on the basis of laches. Defendants assert that the relevant statute of limitations the court should analogize to in the laches analysis should be either Delaware's or Maryland's tort statute of limitations, either of which would set the time limit at three years. Plaintiff argues for analogy to New Jersey's six year tort statute of limitations.

*HN1* In adiralty actions in which no federal statute of limitations is applicable, the time for bringing suit is governed by the equitable doctrine of laches. United New York Sandy Hook Pilots Ass'n v. Rodermond Indus., Inc., 394 F.2d 65 (3d Cir. 1968). See also Construction Aggregates Corp. v. S.S. Azalea City, 399 F.Supp. 662, 665 (D.N.J. 1975). Laches is a flexible measure of time within which admiralty actions must **[*4]** be brought, and is exceeded only when the court finds there has been inexcusable delay in bringing the action which results in undue prejudice to the defendant. Gardner v. Panama R. Co., 342 U.S. 29, 31 (1951). As both parties point out, courts often use the running of the relevant statute of limitations to create a presumption that a delay was inexcusable, and that the defendant has been prejudiced by the delay; if the statute has not run, the opposite is presumed. See Sandy Hook, 394 F.2d at 75; Azalea City, 399 F.Supp. at 665. These statutes are not conclusive, however, for the relevant question is "whether it would be inequitable, because of the delay, to enforce the claim." Czaplicki v. The Hoegh Silvercloud, 351 U.S. 525, 533 (1956).

Defendants have shown enough to overcome any presumption that might be made against them and establish inexcusable delay by plaintiff. Plaintiff, on the other hand, has made a showing that defendants were not unduly prejudiced by the delay sufficient to overcome a possible presumption of prejudice. For purposes of the instant case, therefore, it is irrelevant which statute **[*5]** of limitations the court looks to, since the result will be the same regardless of which presumptions might be made; there has been inexcusable delay, but there has been no resulting prejudice to defendants.

Plaintiff has not forwarded any excuse for the delay in prosecuting this action during the period from June 5, 1987, when the matter was fully ready for trial, to April 12, 1989, when the action was actually brought. Even assuming a presumption in favor of plaintiff, defendant has sufficiently shown an unexcused delay on plaintiff's part.

The second element, resulting prejudice to the defendant, is lacking in this case. Defendant alleges prejudice in that:

1. the Shinnecock has been sold twice since the cable hit;

2. the crewmembers of the Shinnecock on board the date of the cable hit have since dispersed;

3. the whereabouts of the captain of the Shinnecock on the date of the hit are unknown;

4. the records of the Shinnecock as of September 10, 1985 have been destroyed, and;

5. evidence recovered from the damaged cable which, defendants allege, may exculpate the Shinnecock, has allegedly been discarded by plaintiff and/or its agents.

None of these reasons support a **[*6]** claim of laches.

Plaintiff, by means of its several letters, put defendants on notice that plaintiff had a grievance against them, and that a legal action was possible. *HN2*In a laches case, when prejudice is alleged, "the ultimate question is one of prejudice in fact, governed by the time of notification of the existence of the cause of action and the plaintiff's prompt prosecution of same." Hill v. Bruns & Co., 498 F.2d 565, 569 (2d Cir. 1974). Defendants in this action were placed on notice of plaintiff's claim as early as February 5, 1986, less than five months after the hit and well within any of the statutes of limitations proposed for analogy by either party. The court in Hill also ruled, with respect to notice: "[Defendant] had notice within . . . the expiration of the analogous statute of limitations, and it cannot claim prejudice for having let evidence slip away after that date." Id., at 569. See also Gutierrez v. Waterman S. S. Corp., 373 U.S. 206 (1963) (holding no prejudice when witnesses and records had been available to defendant and defendant had not taken advantage of opportunity); De Silvio v. Prudential Lines, Inc., 701 F.2d 13 (2d Cir. 1983) **[*7]** (saying, "[defendant] will not be heard to argue that it is prejudiced by loss of evidence when it was on notice of the accident and a probable lawsuit," within the statute of limitations). Defendants were placed on notice within five months of the hit, after a period of investigation by plaintiff. Defendants cannot now claim prejudice from a lack of evidence that they, themselves, have allowed to vanish since the time of that notification.

Furthermore, plaintiff seems to have had no problem locating the vessel, the captain, and four of five crew members. The independant adjuster stated upon deposition that he had simply not checked into the whereabouts of the captain or crew, which is why defendants did not know their location. Defendants cannot claim that they were prejudiced by lost evidence when they have not bothered to look for it. The boat itself and the records pertaining to the date of the cable hit were also in defendants' possession, and the lack thereof may not be charged to plaintiff's delay when defendants had prompt notice of this claim. Lastly, a motion for laches is not the proper place to allege that plaintiff has discarded evidence.

For the foregoing reasons, defendants' **[*8]** motion to dismiss this action on the basis of laches is denied. An order accompanies this opinion. No costs.

ORDER - July 16, 1991, Entered

This matter having come before the court on motion by defendants to dismiss this action for laches; and the court having considered the written submissions and oral argument of counsel; and good cause appearing,

IT IS on this 16th day of July, 1991,

ORDERED that defendants' motion be and hereby is denied.

Service: **Get by LEXSEE®**
Citation: **1991 US Dist LEXIS 10070**
View: Full
Date/Time: Monday, October 2, 2006 - 11:26 AM EDT



About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Service: **Get by LEXSEE®**
Citation: **1997 US Dist LEXIS 19739**

*1997 U.S. Dist. LEXIS 19739, ***

SUN PIPE LINE COMPANY and ATLANTIC PIPELINE CORP. v. M/T LOTTI SWANN, her engines, tackle, furniture, apparel, etc., in rem, CHRISTIANA MARINE SERVICES CORPORATION, and WILLIAM S. BATES

Civil Action No. 96-4297

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

1997 U.S. Dist. LEXIS 19739

December 8, 1997, Decided
December 8, 1997, Filed

**DISPOSITION:** **[*1]** Christiana's motion for partial summary judgment denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant corporation filed a motion for summary judgment on the admiralty claims brought by plaintiff dock owners for breach of contract and negligence arising from the collision of the corporation's vessel with a tanker ship that destroyed the dock owners' dock.

**OVERVIEW:** Shortly after the collision occurred, the dock owners informed the corporation that they intended to hold the corporation liable for the collision that caused damage to the dock owners' dock. There was a change in the operations manager for the dock owners that resulted in the claim not being filed to the corporation for over two years. Several months later, the corporation denied the claim, contending that the statute of limitations had expired. The dock owners filed suit for breach of contract and negligence. In filing its summary judgment motion, the corporation claimed that the negligence claim was barred either under the Pennsylvania statute of limitations or the doctrine of laches. The court denied the corporation's motion for summary judgment. The doctrine of laches, not the statute of limitations, was applicable to determine whether the action was timely filed. Although the action was not brought within the two-year limitations period, a factor to which the court looked in applying laches, laches did not bar the action. The delay was due to an administrative mix up, and the corporation was not prejudiced, as the claim was filed within seven months of the limitations period.

**OUTCOME:** The court denied the corporation's motion for partial summary judgment in the dock owners' admiralty action for negligence and breach of contract.

**CORE TERMS:** statute of limitations, laches, admiralty, expiration, claim of negligence, repairs, dock, sitting, trouble, manager, bringing suit, summary judgment, limitations period, court of appeals, file a claim, partial, depreciation, experienced, betterment, prejudiced, oversight

### LexisNexis(R) Headnotes ♦ Hide Headnotes

Governments > Legislation > Statutes of Limitations > Time Limitations 🔗

Real Property Law > Torts > Trespass to Real Property 🔗

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 19739

Case 1:06-cv-00193-MPT   Document 17   Filed 10/02/2006   Page 27 of 30

Page 2 of 5

Torts > Damages > Compensatory Damages > Property Damage > General Overview

*HN1* ⚡ The Pennsylvania legislature has enacted a comprehensive statute of limitations, which provides: The following actions and proceedings must be commenced within two years: Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter. 42 Pa. Cons. Stat. Ann. § 5524. More Like This Headnote

Admiralty Law > Personal Injuries > Maritime Tort Actions > Negligence > General Overview

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses

Governments > Legislation > Statutes of Limitations > General Overview

*HN2* ⚡ Delay in bringing suit on an admiralty claim is barred by laches, not by any statute of limitations. More Like This Headnote

Admiralty Law > Personal Injuries > Maritime Tort Actions > Negligence > General Overview

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses

Governments > Legislation > Statutes of Limitations > Pleading & Proof

*HN3* ⚡ The doctrine of laches looks to Pennsylvania's statute of limitations to gauge the timeliness of an admiralty action and the plaintiff has the burden of showing that equity does not favor a time bar. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses

Governments > Legislation > Statutes of Limitations > Time Limitations

*HN4* ⚡ For purposes of the doctrine of laches, the inquiry into whether an action should be considered timely is twofold. First, a court looks to see if the plaintiff's neglect in not bringing the action within the relevant state limitations period is excusable. Second, a court looks to see if the defendant has incurred prejudice as a result of the delay in filing the claim. More Like This Headnote

**COUNSEL:** For SUN PIPE LINE COMPANY, ATLANTIC PIPELINE CORP., PLAINTIFFS: A. CHRISTOPHER YOUNG, PIPER & MARBURY, L.L.P., PHILADELPHIA, PA USA.

For CHRISTIANA MARINE SERVICES CORPORATION, DEFENDANT: GEORGE R. ZACHARKOW, MATTIONI, MATTIONI & MATTIONI, LTD., PHILA, PA USA.

WILLIAM S. BATES, DEFENDANT, Pro se.

**JUDGES:** Louis H. Pollak, J.

**OPINION BY:** Louis H. Pollak

**OPINION:** MEMORANDUM

Get a Document - by Citation - 1997 U.S Dist. LEXIS 19730    Page 3 of 5

Case 1:06-cv-00193-MPT   Document 17   Filed 10/02/2006   Page 28 of 30

On March 27, 1997, Defendant Christiana Marine Services Corporation ("Christiana") filed a Motion for Partial Summary Judgment on the claims brought against it by Plaintiffs Sun Pipe Line Company and Atlantic Pipeline Corp. ("Sun Pipe Line"). Christiana asserts that Sun Pipe Line's claim of negligence is barred either under Pennsylvania's statute of limitations or the doctrine of laches. Plaintiffs responded on April 14, 1997, asserting that Pennsylvania's statute of limitations does not apply to this admiralty suit and that its claim of negligence is not barred by the doctrine of laches.

I.

On October 30, 1993, the M/T LOTTI SWANN, which was owned by Christiana Marine Services Corporation, allided with the bow of the tanker ship, METEORA, **[*2]** which was berthed at the Fort Mifflin dock. The allision destroyed 200 feet of catwalk on the dock, which was owned by Sun Pipe Line Co. and Atlantic Pipeline Corporation. On November 1, 1993, Jack Fox, operations manager of the dock, wrote to William Bates, President of Christiana, to notify him that Sun Pipe Line intended to hold Christiana responsible for all damages resulting from the collision.

It was Sun Pipe Line's practice for the operations manager in charge of repairs to certify those repairs as complete before a claim for services is sent to a third party. In December of 1993, Jack Fox was promoted from his position of operations manager and was replaced by Ronnie Price. In early 1994, Sun Pipe Line completed the repairs to the dock. However, Ronnie Price was not aware of the need to get the job certified as complete and never certified the repairs. Because of this oversight, a claim was not immediately sent to Christiana.

In August of 1995, Christiana stopped operating as a provider of marine transportation services due to financial problems. In late October or early November, 1995, the failure to submit a claim to Christiana was brought to the attention of Jeffrey Wagner, **[*3]** who is employed in Sun Pipe Line's legal department. On November 10, 1995, Sun Pipe Line sent a claim statement to Christiana for $ 198,682.75. In a letter dated March 22, 1996, Christiana denied any liability to Sun Pipe Line on the grounds that the Pennsylvania statute of limitations had expired on October 30, 1995, 11 days before the claim was sent. On June 10, 1996, Sun Pipe Line brought the present action in admiralty for breach of contract and negligence.

*HN1* The Pennsylvania legislature has enacted a comprehensive statute of limitations which provides:

The following actions and proceedings must be commenced within two years:

. . .

(7) Any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud, except an action or proceeding subject to another limitation specified in this subchapter.

42 Pa. C.S.A. § 5524.

II.

Christiana does not contest Sun Pipe Line's assertion that its claims are brought in admiralty. However, Christiana argues that 42 Pa. C.S.A. § 5524 applies to Sun Pipe **[*4]**  Line's claim of negligence and provides a statute of limitations of two years. Sun Pipe Line argues that Third Circuit precedent dictates that a district court sitting in admiralty apply the doctrine of laches to determine if an action is timely.

The Third Circuit has stated that *HN2* "delay in bringing suit on an admiralty claim is barred by laches, not by any statute of limitations." Pierre v. Hess Oil Virgin Islands Corp., 624 F.2d 445, 450 (3d Cir. 1980); see also Brooks v. Hess Oil Virgin Islands Corp., 809 F.2d 206 (3d Cir. 1987). n1 In light of these decisions, the application of the doctrine of laches in this case is appropriate, see Brooks, 809 F.2d at 208.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Although in Brooks and Pierre the court of appeals considered the application of a foreign statute of limitations in the enforcement of a foreign substantive right, its holding is relevant here. In both cases the court of appeals considered the statute of limitations to be a procedural matter, and therefore controlled by forum law. The court, sitting in admiralty, therefore applied the doctrine of laches as the law of the forum.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*5]**

Christiana argues in the alternative that this action should be barred under the doctrine of laches. Christiana notes that where an action is brought outside the relevant state's statute of limitations, the burden is on the plaintiff to establish that, as a matter of equity, the action is timely. Both parties agree that *HN3* the doctrine of laches looks to Pennsylvania's statute of limitations to gauge the timeliness of this action and that Sun Pipe Line has the burden of showing that equity does not favor a time bar in this case.

*HN4* The inquiry into whether an action should be considered timely is twofold. First, a court looks to see if the plaintiff's neglect in not bringing the action within the relevant state limitations period is excusable. Second, a court looks to see if the defendant has incurred prejudice as a result of the delay in filing the claim.

In the present case, Sun Pipe Line argues that the delay was due to an administrative mix-up but that Christiana was not prejudiced because the claim was filed within seven months of the expiration of the Pennsylvania limitations period. Furthermore, Sun Pipe Line claims that it continually represented to Christiana that it was going **[*6]**  to file a claim for the damage caused by the LOTTI SWANN. Christiana asserts prejudice because (1) it experienced financial trouble in the time between the expiration of the state statute of limitations and the day the claim was filed and (2) its ability to challenge the amount of the claim has been hampered by the delay.

It would be inequitable to bar this claim under the doctrine of laches. Sun Pipe Line remedied its oversight in a timely fashion and filed a claim with Christiana within two weeks of the expiration of the Pennsylvania statute of limitations. Furthermore, Sun Pipe filed suit less than three months after receiving notice from Christiana that the claim would be considered barred by the Pennsylvania statute of limitations.

Although it is unfortunate that Christiana experienced financial trouble, Christiana has not shown that the Sun Pipe Line's delay in bringing suit caused that financial trouble. Indeed, Christiana was experiencing financial difficulty in August of 1995, months before the

Get a Document - by Citation - 1997 U.S. Dist. LEXIS 19739      Page 5 of 5

Case 1:06-cv-00193-MPT    Document 17    Filed 10/02/2006    Page 30 of 30

expiration of the statute of limitations. Finally, Christiana has not adequately substantiated its claims that the delay in filing this action impaired its ability to develop information **[*7]** about the cost of work, the depreciation factor, or the issue of betterment. Shortly after the incident, Sun Pipe Line notified Christiana of its intent to file a claim. Sun Pipe Line never retracted that intention and sent the claim to Christiana only eleven days after the expiration of the statute of limitations. Upon receipt of the claim from Sun Pipe Line, Christiana could have begun its investigation into the issues of cost, depreciation, and betterment. Furthermore, Christiana has not established that its effort to investigate these issues has been actually prejudiced.

In sum, this court, sitting in admiralty, applies the doctrine of laches to Sun Pipe Line's claim of negligence. In light of the excusable delay and scant prejudice to the defendant in the filing of Sun Pipe Line's claim, this court holds that its claim is not barred by the doctrine of laches. Therefore, Christiana's motion for partial summary judgment is denied.

ORDER - ENTERED: 12/9/97

Upon consideration of the defendants' motion for partial summary judgment and plaintiffs' response thereto, it is hereby ordered that the motion is DENIED.

December 8, 1997

Louis H. Pollak

J.

Service: **Get by LEXSEE®**
Citation: **1997 US Dist LEXIS 19739**
View: Full
Date/Time: Monday, October 2, 2006 - 11:27 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
A - Citing Refs. With Analysis Available
i - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 LexisNexis®      About LexisNexis  |  Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JOHN B. PICCHI | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 06 - 193 (KAJ) |
| v. | : | |
| | : | |
| SUMMIT NORTH MARINA, Inc. | : | |
| Defendant | ; | |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum in opposition to the Motion to Dismiss was served using CM/ECF which will send notification of such filing to, and by United States mail, postage prepaid, this 2nd day of October, 2006, to:

| | |
|---|---|
| Stephen P. Casarino, Esquire<br>800 North King Street<br>Suite 200<br>PO Box 1276<br>Wilmington, DE 19899 | |

**HOLLSTEIN KEATING**
**CATTELL JOHNSON & GOLDSTEIN, PC**

By: _____
        Patrick J. McStravick

Dated:  October 2, 2006

{2188.00001:PJM0036}

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

_____
                                        :
JOHN B. PICCHI                          :
                        Plaintiff,      :
                                        :        Civil Action No. 06 - 193 (KAJ)
v.                                      :
                                        :
SUMMIT NORTH MARINA, Inc.               :
                        Defendant       :
_____:

<u>**ORDER DENYING MOTION TO DISMISS**</u>

    **AND NOW,** upon consideration of the motion of the defendant to dismiss, and any and

all responses and replies thereto,

    **IT IS HEREBY ORDERED** that the motion to dismiss is **DENIED**.

    **SO ORDERED** this _____day of _____, 2006.


_____
                                    J.

{2188.00001:PJM0035}