IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JOHN B. PICCHI,

          Plaintiff,

v.                                    Civil Action No. 06-193-MPT

SUMMIT NORTH MARINA, INC.,

          Defendant.

## MEMORANDUM ORDER

This admiralty action was filed on March 23, 2006. Plaintiff, John B. Picchi ("Picchi") alleges that defendant, Summit North Marina, Inc. ("Summit") negligently caused damage to his boat, the CHRISTINA MARIE, while berthed at Summit on February 4, 2003. According to the complaint, the vessel sank as a result of ice being pushed into the transom of the boat while an employee of Summit was breaking ice in the channel of the marina. D.I. 1. On September 18, 2006, Summit moved to dismiss the action on the basis of laches. D.I. 15. Picchi filed his opposition brief, along with affidavits on October 10, 2006. D.I. 17-19. No reply brief was filed by Summit. For the reasons discussed herein, Summit's motion to dismiss is denied.

**I.      Facts:**

Picchi alleges that on February 4, 2003, his vessel, the CHRISTINA MARIE, sank at its berth at Summit's marina. On that date, Summit contacted Picchi's wife and advised that the boat was sinking. Picchi claims that Summit took no action to stop the sinking of the vessel. D.I. 19 at ¶¶ 3-4. After the vessel was raised, a large hole of 5 ½ inches high and 7 ½ inches long was

found in the wood transom, which according to Picchi was due to ice being forced through it. Picchi was advised by other slip owners, as well as the divers involved in the salvage, that an employee of Summit was breaking ice in the marina with an improvised icebreaker and this activity caused sheets of ice to be pushed into various berthed vessels, including his boat. D.I. 19 at ¶¶ 5-6. Picchi maintains that he immediately retained an attorney, Angelo Falciani, who exchanged correspondence with Summit, its attorneys and insurers in March through May 2003, and advised of Picchi's intent to hold Summit responsible for the damage to the vessel. D.I. 19 at ¶¶ 7-8. On March 25, 2003, Falciani wrote to Summit advising of his representation and telling it to notify its insurer. See D.I. 19 Ex. A. Further on May 12, 2003, Mr. Falciani wrote to Darrell Baker, Esq., giving Summit's carrier permission to inspect and survey the vessel. See D.I. 19, Ex. B.[1] Picchi understood that Falciani was representing him regarding the claim and would either refer the matter to Delaware counsel or file an action if the matter could not be settled. D.I. 19 at ¶ 11. Unfortunately, in September 2005, Falciani advised Picchi that he failed to file an action within the applicable limitations period. This resulted in Picchi retaining another attorney to represent him in a legal malpractice action against Falciani. That attorney, David S. Sweetser, advised that an admiralty action still needed to be filed to determine the continued viability of Picchi's claim against Summit under the laches doctrine. Picchi then consulted a Delaware maritime attorney, who, due to a conflict, could

---

[1] From the letter, it appears that Falciani and Baker had communicated previously and the letter authorized the insurer's expert to inspect the boat.

2

not handle his case. That attorney referred him to his present counsel, who filed the action in March 2006. D.I. 19 at ¶¶ 12-16.

## II.     Parties' Positions

Summit argues that the applicable limitation period is 10 *Del.* C. § 8107, which requires that any action for recovery of damages for injury to personal property must be filed within two years from the accruing of the cause for such action. Summit notes that Picchi did not institute his action until more than three years after the incident occurred, and as a result, the burden of proof for laches shifts to Picchi since the analogous state statute of limitations has run on the claim. *Wilkes v. H. M. Wrangell & Co.*, 293 F. Supp. 522, 524 (D. Del. 1993). Summit relies on well-established case law, which upholds a laches defense if the court finds "both an inexcusable delay in instituting the suit and prejudice resulting to the defendant from such delay." *Lasseigne v. Nigerian Gulf Oil Co.*, 397 F. Supp. 465, 473 (D. Del. 1975). Since Picchi delayed filing his action within the two-year limitation period, Summit contends that he now has the burden to show that the delay is neither unreasonable nor caused significant prejudice. *Id.* Summit argues that Picchi's failure to timely file his action is particularly unjustified since he had a damage survey report as early as March 23, 2003, within six weeks of the incident, which advised that the puncture was consistent with ice being forced against the transom. Summit contends that the delay has "greatly prejudiced" it, since the memories of those with knowledge "have likely dimmer over time" and records are lost or destroyed.[2]

---

[2] Summit does not identify what records are or may have been destroyed due to the delay. It fails to identify any witness who cannot accurately recall the incident or the post-incident events.

3

Picchi does not contend that his action was timely filed or that he does not have the initial burden. Rather, he argues that his delay was excusable and not the result of his conduct, but due to the negligence of his original attorney. Further, he maintains that there is no evidence of any prejudice to Summit. To the contrary, Picchi notes that there is ample evidence that most of the key information and witnesses are available. Picchi claims that dismissing the action at this time before any discovery is taken to confirm the availability of documents and memories of witnesses is premature. Picchi also points to Summit's cross-claims which are based on the same facts as his claims. Moreover, he notes that the vessel has been in Summit's possession for the entire time.

### III.    Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all well pleaded factual allegations set forth in the complaint, and must construe them in the light most favorable to the non-moving party. *Doe v. Delie,* 257 F.3d 309, 313 (3d Cir. 2001). "While a court will accept well-plead allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations." *In re Cendent Corp. Sec. Litig.,* 190 F.R.D. 331, 334 (D. N.J. 1999) (citing *Miree v. Dekalb County, Ga.,* 433 U.S. 25, 27 n.2 (1977)).

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Federal Rule of Civil Procedure 56(c).*

The party seeking summary judgment bears the initial burden of establishing the lack of a genuinely disputed material fact by demonstrating that there is an "absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the non-moving party, after adequate time for discovery, fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, summary judgment is appropriate. *Id.* at 323. However, a court is to give the non-moving party the benefit of all justifiable inferences and must resolve disputed issues of fact in favor of the non-movant. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Although defendant filed this matter as a motion to dismiss, it has been converted to a motion for summary judgment since documents outside the pleadings have been submitted for consideration. *Compare* FRCP 12 and 56.

### IV.  Standards for Laches

Under Third Circuit law, the measure of timeliness in bringing a suit on an admiralty claim is governed by the equitable doctrine of laches. *See, Brooks v. Hess Oil Virgin Islands Corp.*, 809 F.2d 206, 208 (3d Cir. 1987); *Pierre V. Hess Oil Virgin Islands Corp.*, 624 F.2d 445, 450 (3d Cir. 1980). The defense of laches requires a finding of both inexcusable delay in instituting the suit and prejudice resulting to the defendant. *Lasseigne v. Nigerian Gulf Oil Co.*, 397 F. Supp. 465, 474 (D. Del. 1975), *relying on Gruca v. United States Steel Corp.*, 495 F.2d 1252, 1258 (3d Cir. 1974). Where inexcusable delay exists without prejudice to the defendant, "laches cannot be invoked." *Lasseigne*, 397 F. Supp. at. 474. *See*

*also Gruca*, 495 F. 2d at 1258. A plaintiff bears the burden of proof on both inexcusable delay and prejudice where, as in the instant matter, the analogous statute of limitations has expired. *Id.* The applicable limitation period is two years pursuant to 10 *Del. C.* § 8107. In fixing the time limit on which the rebuttable presumption arises, the state statute of limitations does not function as an absolute, "because laches focuses on the excusability of the delay and the prejudice to the defendant, not the length of the delay per se." *Gruca,* 495 F.2d at 1259. Although length of the delay does not mandate the outcome, it "does control the burdens of proof." *Id.* Therefore, a plaintiff who sleeps on "his rights for a period of time greater than the applicable statute of limitations," then must "'come forward and prove that his delay was excusable and that it did not . . . prejudice the defendant.'" *Id. quoting Burke v. Gateway Clipper,* 441 F.2d 946, 949 (3d Cir. 1971). As a result, Picchi bears the burdens under the rebuttable presumption since his action was instituted in March 2006, more than three years from the date of the incident and over a year after the analogous limitation period expired.

## V.   Discussion

In proving that delay was excusable, Picchi relies heavily on his unrefuted affidavit. As noted in his brief, Picchi immediately sought counsel, Angelo Falciani, who notified Summit in March 2003 of his representation and told it to notify its insurer of the loss and his representation of Picchi. In May 2003, within three months after the incident, Falciani granted permission to Summit's carrier to inspect and survey the vessel in a letter to counsel for the insurer. Picchi was

6

copied on both letters. In addition, Summit was copied on the letter to its carrier. Therefore, both Summit and its insurer were clearly aware of Picchi's claim and his intention to pursue the matter.

According to those letters, Falciani practices in New Jersey and Pennsylvania. What happened between May 2003 and September 2005 regarding any communication between Picchi and Falciani is unknown: however, Picchi asserts that not until September 2005 did Falciani advise of his failure to file suit or have the action filed in Delaware. Prior to that time, Picchi understood that Falciani was representing him and would either refer the matter to Delaware counsel, or file suit of his behalf. Both letters confirm that Falciani was representing Picchi in 2003. Moreover, a copy of the first letter was sent to Ben Castle, Esq., a Delaware attorney. The reason why Castle was copied on that letter is also not known to the court.

In response to Falciani's admitted malpractice, Picchi sought representation for an action against Falciani and eventually retained the services of David Sweetser, Esq., who reviewed the file and researched the statute of limitations issue. Sweetser concluded and advised Picchi that the action may not be barred because admiralty applied a different standard under laches than the applicable Delaware statute of limitations. Sweetser assisted Picchi in locating Delaware maritime counsel, who subsequently filed suit in March 2006, approximately six months after Picchi learned of the malpractice of his prior attorney and 13 months after the analogous limitations period had run.

There is no evidence that Summit contributed to the filing delay by

concealment, misleading actions, misrepresentations or other inequitable conduct.

Cases cited by Picchi suggest a liberal approach to the laches issue reflecting the desire in admiralty to determine actions on the merits. *Walck v. Discavage*, 741 F. Supp. 88 (E.D. Pa. 1990) tolled the general three year maritime statute of limitations for personal injuries on equitable grounds. *Walck* involved an accident that occurred in the Indian River Inlet. Plaintiff's counsel initially filed the matter in Maryland, believing that jurisdiction was proper. After the action was dismissed, the plaintiff re-filed in Pennsylvania in federal court, which denied defendant's motion to dismiss on the basis of equity's desire to adjudicate matters on the merits. The court also relied on the plaintiff's diligence in pursuing his rights.

In *Sun Pipe Line and Atlantic Pipeline Corp. v. M/T LOTTI SWANN*, 1997 U.S. Dist. LEXIS 19739 (E.D. Pa. 1997, Pollack, J. Civ. A. No. 96-4297), the court emphasized the prompt notice that was given of a potential claim for damage to the plaintiff's dock for denying the defendant's motion for summary judgment. The court also relied upon the absence of intentional delay on the part of the plaintiff and the lack of any showing of prejudice to the defendant.

In *Wilkes v. H.M. Wrangell & Co.*, 293 F. Supp. 522 (D. Del. 1968), a case relied upon by both parties, the court denied the defendants' motion for summary judgment in an action for personal injuries since the record disclosed that no significant documents had been lost or destroyed and there had been no showing that if the plaintiff had sued within the statutory period that the

8

defendants could have discovered anything which was not at their disposal after they were informally notified four and half years after the accident. The court, however, found that the plaintiff's failure to begin suit within the statutory period was his own fault, noting that he did not employ an attorney until more than two years after the accident and it was a year thereafter that his attorney referred the matter to New York counsel to institute suit. *Id.* at 526.

In another case cited by both sides, *Lasseigne v. Nigerian Gulf Oil Co.*, 397 F. Supp. 465 (D. Del. 1975), on the issue of delay, the court held that "[a] *silent* record and *absence* of factual allegations preclude drawing inferences favorable to plaintiff." *Id.* at 474. (emphasis added). The court noted that a delay of almost two years before filing the action in another jurisdiction was unexplained. Moreover, another 18 months elapsed after the suit was filed when the plaintiff learned from opposing counsel that he had sued the wrong corporation, that is, had filed his action against the parent rather than the subsidiary. Again, no reason was proffered for the plaintiff's late awareness of his error. The court also emphasized that after learning of his mistake, plaintiff waited two more months to add the proper defendant and almost another year to properly file the matter in Delaware. No reasons were provided for both those additional periods of delay. In the absence of any explanation for the various delays, the court found that the plaintiff failed to rebut the presumption of inexcusability.

Unlike the plaintiff in *Wilkes* and the absence of facts in *Lasseigne*, Picchi immediately hired a lawyer and notified Summit of his intent to pursue his

property damage claim. He allowed Summit access to his vessel for investigation and evaluation by its expert. After learning of his attorney's error, Picchi diligently pursued his options by hiring a second attorney, who reviewed and determined that the admiralty matter may not be barred. That counsel promptly assisted Picchi in locating Delaware counsel to bring this action. However, the more than two year unexplained hiatus between the May 2003 letter and the first attorney's admission in September 2005 causes concern. Although Picchi asserts that he assumed counsel was pursuing his case, either by filing suit, having the action filed or by settlement, there is no indication that Picchi communicated or attempted to contact his first attorney regarding the status of the matter between May 2003 and September 2005. His affidavit does not suggest that his first counsel misrepresented or mislead him in any way during that 28-month period. Although the record shows diligence on the part of Picchi before June 2003 and after September 2005, it is silent on what efforts Picchi *himself* made during that time. Picchi attempts to separate his actions from those of his attorney, but neither *Wilkes* nor *Lasseigne* distinguishes between plaintiffs' conduct and their attorneys' inaction when the defendants' behavior did not contribute to or cause the delay.

    Inexcusable delay is only one part of the analysis. From the cases cited by the parties, the major emphasis and more determinative factor in deciding whether laches applies, is prejudice to the defendant. *See, Gruca v. United States Steel Corp.*, 495 F.2d 1252 (3d Cir. 1974); *Lasseigne v. Nigerian Gulf Oil Co.*, 397 F. Supp. 465 (D. Del. 1975); *Wilkes v. Wrangell & Co.*, 293 F. Supp.

522 (D. Del. 1968). As noted previously herein, defendant merely claims, without any foundation, that the memories of witnesses "have likely dimmed" and it "does not have the benefit . . . to lost or subsequently destroyed records" due to the delay. Picchi effectively has shown through the undisputed affidavit of Patrick McStravick, Esq., counsel for Picchi, that McStravick contacted a number of witnesses, including J.R. Rinker, a diver on the scene of the incident, Terry Boos of Guardian and James McCarthy of Boat USA, who were involved in the oil clean up and the raising of the vessel respectively and Jack Horner, the post incident surveyor, all who are available and willing to testify. Jack Horner specifically remembers the vessel and can testify regarding his survey report which has been produced to Summit. Further, Summit has had possession of the vessel since the incident which remains on its premises. Moreover, Summit raised a counterclaim for storage fees.

Despite the fact that courts of the Third Circuit in post-statute claims recognize the presumption of prejudice, which requires a plaintiff to prove lack of prejudice, those same courts recognize that prejudice must be tangible – actually exist. *See, Baczor v. Atlantic Richfield Co.*, 424 F. Supp. 1370, 1380 (E.D. Pa. 1976); *Sun Pipe Line and Atlantic Pipeline Corp. v. M/T LOTTI SWANN*, 1997 U.S. Dist. LEXIS 19739 (E.D. Pa 1997, Pollack, J. C.A. No. 96-4297).

The *Wilkes* case is particularly instructive on the issue of prejudice. The case involved an action by a longshoreman against the vessel owners for personal injury damages alleged to have occurred due to negligence and the failure to provide a seaworthy vessel. The plaintiff failed to initiate his action

11

against the shipowner within the analogous two-year Delaware statute of limitations. After finding that the plaintiff's delay was inexcusable, the court held that the presumption of prejudice was rebutted by the record. That conclusion was reached despite the deaths of important witnesses after the limitation period had run, including the master of the vessel, the physician who operated on the plaintiff for his alleged injuries, and the foreman or supervisor on the job when the plaintiff allegedly was injured. Moreover, in *Wilkes*, unlike the instant matter, the defendant was not aware of the injuries and claim until more than four and a half years after the incident occurred. In determining that actual prejudice had not been shown, the court commented:

> Respondents offer no proof that the memories of persons having knowledge of relevant facts have been dimmed with the passing of time; indeed, respondents point to no one who is informed about the accident.
> Nor does the record contain any suggestion that records of a significant kind have been lost or destroyed during the period of libelant's delay. The log of the S.S. Corona is still in existence but contains no entries or information concerning the accident.

Summit was aware of the incident on the day that it occurred. It knew of Picchi's intent to pursue a property damage claim. It requested and was granted the opportunity to investigate and survey the vessel within three months of the incident. Like the defendants in *Wilkes*, Summit has provided no evidence to refute Picchi's showing that relevant witnesses are available and it has identified no crucial documents that are lost or destroyed. Having knowledge of Picchi's damage claim within a few months of the incident, it behooved Summit to investigate with dispatch all facts surrounding the claim and preserve evidence regarding the potential claim.

In *AT&T v. F/V Shinnecock, et. al.*, 1991 U.S. Dist. LEXIS 10070 (D. N.J. 1991 Fisher, J C. A. No. 89-5387, the defendants presented a laundry list of alleged prejudicial factors, including that the vessel had been sold twice since the incident; the crew members involved in the incident had since dispersed and the whereabouts of the captain was unknown; the records of the vessel including those concerning the incident were destroyed; and the faulty equipment (damaged cable) which allegedly contributed to the accident was discarded by the plaintiff or its agents. In denying the defendants' motion to dismiss and finding that none of those reasons support a claim of laches, the court noted that "[i]n a laches case, when prejudice is alleged, 'the ultimate question is one of prejudice *in fact*, governed by the time of notification of the existence of the cause or action and the plaintiff's prompt prosecution of the same.'" *Id.* at 6 quoting *Hill v. Burns & Co.*, 498 F.2d 565, 569 (2d Cir. 1974). (emphasis added). In its conclusion, the court relied on the fact that the defendants received notice of the claim within five months of the accident. Even though inexcusable delay was found against the plaintiff, the defendants could not claim prejudice due to lack of evidence they "allowed to vanish since the time of . . . notification." *Id.* at 7.

Summit makes only conclusory and vague references of prejudice. It fails to provide any specific facts to support that argument. Further, Summit filed a counterclaim for storage fees, admitting that it has possession of the vessel. At the same time, it summarily claims that documents may have been lost, thereby suggesting the court believe that it or its insurer discarded key documents and

13

information related to its fee claim and Picchi's property damage claim. As noted by Picchi, his defense to the storage charges, based on the negligence of Summit, is not precluded by any statute. It is irrational (and frankly, unbelievable) that Summit may have destroyed documents related to its ongoing contract dispute.

## V.   Conclusion

For the reasons contained herein, IT IS ORDERED and ADJUDGED that Summit's motion to dismiss (D.I. 15) is DENIED.

Date: April 12, 2007

_____
UNITED STATES MAGISTRATE JUDGE