

# HOLLSTEIN KEATING
# CATTELL JOHNSON & GOLDSTEIN P.C.

| | | |
|---|---|---|
| PENNSYLVANIA OFFICE<br>Suite 2000, Eight Penn Center<br>1628 John F. Kennedy Boulevard<br>Philadelphia PA 19103<br>(215) 320-3260<br>FAX (215) 320-3261 | ATTORNEYS AT LAW<br><br>1201 NORTH ORANGE STREET, SUITE 730<br>WILMINGTON, DE 19801<br>(302) 884-6700 | NEW JERSEY OFFICE<br>Willow Ridge Executive Office Park<br>750 Route 73 South – Suite 301<br>Marlton, NJ 08053<br>(856) 810-8860<br>Fax (856) 810-8861 |
| Lynne M. Parker<br>Member NJ, PA & DE Bars | FAX: (302) 573-2507 | E-mail Address<br>lmp@hkcjg.com |

January 11, 2008

**<u>FILED ELECTRONICALLY</u>**

The Honorable Mary Pat Thynge
United States District Court
844 N. King Street
Lock Box 8
Wilmington, DE  19801

      RE:    **John B. Picchi v. Summit North Marina, Inc.**
              **Civil Action No. 06 - 193 (MPT)**

Dear Judge Thynge:

     Per the instructions of your Clerk, attached please find the Pre-Trial Order with the signature line for Your Honor.

                            **Respectfully submitted,**

                            **HOLLSTEIN KEATING CATTELL**
                            **JOHNSON & GOLDSTEIN, P.C.**

                              /s/Lynne M. Parker
                          Lynne M. Parker, Esquire. (Bar No. 2811)
                          1201 N. Orange Street, Suite 730
                          Wilmington, Delaware 19801
                          Phone #: (302) 884-6700
                          Fax #: (302) 573-2507

                          Edward V. Cattell, Esquire  *pro hac vice*
                          Patrick J. McStravick, Esquire  *pro hac vice*

January 11, 2008
Page - 2 -

        Hollstein Keating Catell Johnson & Goldstein, P.C.
        Eight Penn Center, Suite 2000
        1628 John F. Kennedy Boulevard
        Philadelphia, PA 19103
        Telephone:  (215) 320-3260
        Facsimile:  (215) 320-3261

        Attorneys for Plaintiff
        John B. Picchi

cc:    Stephen Casarino, Esquire (Via Regular Mail and Electronic Service)

{2188.00001:PJM0139}

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JOHN B. PICCHI | : | |
| Plaintiff, | : | |
| | : | Civil Action No. 06 - 193 (KAJ) |
| v. | : | |
| | : | |
| SUMMIT NORTH MARINA, Inc. | : | |
| Defendant | ; | |

**FINAL PRE-TRIAL ORDER**

1.  **General Information**

    a.  **Names, Addresses, And Telephone Numbers Of Counsel For The Parties description Of The Parties; Relationship; Representation**

    Counsel for the Plaintiff, John Picchi, owner of the M/V CHRISTINA MARIE, the vessel which is the subject of this litigation:

    > Lynne Parker, Esquire  (Bar No. 2811) - local counsel
    > 1201 N. Orange Street, Suite 730
    > Wilmington, Delaware 19801
    > Phone #: (302) 884-6700
    > Fax #: (302) 573-2507

    > Edward V. Cattell, Esquire  *pro hac vice*
    > Patrick J. McStravick, Esquire  *pro hac vice* - lead counsel

    Counsel for Defendant, Summit North Marina, Inc., owner of the Marina where the incident which forms the basis of this action took place:

    > Stephen P. Casarino. Esquire (Bar No. 174)
    > Casarino Christman & Shalk, P.A.
    > 800 North King Street, Suite 200
    > P.O. Box 1276
    > Wilmington, DE 19899
    > (302) 594-4500.

      b.      **Brief Description of the Nature of the Action**

Plaintiff John Picchi had his vessel M/V CHRISTINA MARIE docked at Summit North Marina on February 4, 2003, pursuant to a contract for a berth he had entered into days earlier. On the morning of February 4, 2003, the M/V CHRISTINA MARIE sank in her berth. Plaintiff alleges that defendant Summit North Marina caused the sinking of his vessel of due to the negligence of its employees in the breaking of ice on that morning, resulting in damages, including the loss of the vessel and its appurtenances, the raising of the vessel, the cost of oil abatement, and storage, as well as other costs outlined below.

Defendant has alleged a counter claim for storage of the vessel on land after it was hauled and removed from the water.

      c.      **Jurisdiction of the Court**

Jurisdiction is not disputed.

This is an admiralty and maritime action within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. This court has subject matter jurisdiction pursuant to 28 U.S.C. §1333.

The parties have further stipulated to a non-jury trial on all claims, and have consented to the trial before Magistrate Judge Mary Pat Thynge.

    **2.**    **Uncontested Facts**

      a.      On February 4, 2003, the CHRISTINA MARIE was moored at the Summit North Marina, pursuant to a contract.

      b.      Four days prior to the sinking, Mr. Picchi came to the Marina and paid his dockage fee for the year.

      c.      Defendant Summit North Marina leased the marina, and had possession and control of the Marina for all relevant purposes.

      d.      The C&D canal, which is directly adjacent to the Marina, was closed due to ice on February 4, 2003; Access to the C&D canal from the Marina was also closed as of this date.

    e. Employee(s) of Summit North Marina, was/were operating an icebreaking vessel the morning of the incident.

    f. The ice breaking vessel was breaking ice that had formed along the shoreline, and in the Marina. This ice breaking vessel was owned by Summit North Marina.

    g. The Summit North Marina ice breaker was the only vessel operating in the Marina at that time.

    h. The ice breaking vessel docked at the gas dock on the morning in question, directly across from the CHRISTINA MARIE's berth.

    i. At approximately 9:00, Summit North Marina employee King noticed the vessel taking on water.

    j. Before 10:00am, the vessel was completely submerged, after the lines were cut by Summit North Marina Employees.

    k. On February 4, 2003, after the CHRISTINA MARIE sank, and while it was on the bottom in its slip, Janice Trala, the defendant's manager, returned the slip contract check to Mr. Picchi.

    l. The CHRISTINA MARIE was raised over four (4) days in February of 2003.

    m. When the CHRISTINA MARIE was raised, a significant hole [5 1/2" x 7 1/2"] was found in the transom of the vessel, at the water line.

    n. Plaintiff hired a salvor, James McCarthy of Seaport, to raise the vessel. The cost was $15,812.00. Plaintiff paid this amount.

    o. Summit North Marina hired Guardian Environmental Services to undertake the oil abatement. "Responsible parties" for the purposes were named as Summit North Marina and John Picchi. Guardian's charge was $33,495.24.

    p. Guardian applied to the U.S Coast Guard Oil Pollution Trust Fund, and received $20,783.86 in full and final compensation for its claims.

    q. Due to unpaid interest and penalties, the amount for oil abatement, owed to the Department of the Treasury, is currently $30,663.79.

    r. The Oil Trust has claimed this $30,663.79 against Mr. Picchi.

    s. There is also a $330.00 bill from DNREC, which was paid by plaintiff.

**3.     Plaintiff's Issues of Fact and Expected Proofs**

The main factual issue is whether the defendant's ice breaking operations were the cause of the sinking of the CHRISTINA MARIE, causing the loss of the vessel and other damages.

Plaintiff will establish the following facts in support of its allegation of negligence against defendant through testimony of its witnesses, documentary evidence, and expert testimony.

    a.     The CHRISTINA MARIE was not observed to be sinking when Mr. Picchi was there four days before the sinking of the vessel, and its bilge pumps, electricity and heat were in working order.

    b.     A Security Guard retained by Summit North Marina noted in a log that from the previous night to 8:00am, all vessels at Summit North Marina were secured, i.e., on the morning of February 4, 2003 the vessels were afloat in their slips with no indication they were sinking.

    c.     The CHRISTINA MARIE was not observed to be sinking as of 8:00am on February 4, 2003.

    d.     Defendant's employees were breaking directly next to Mr. Picchi's vessel and were striking vessels with ice, including Mr. Picchi's.

    e.     Ice in the vicinity of the vessel was 5" to 8" thick.

    f.     The icebreaking operations of Summit North Marina pushed ice into the transom, which punched a hole in the transom, causing the vessel to sink.

    g.     The CHRISTINA MARIE was seaworthy and in appropriate condition in February 2003.

    h.     The CHRISTINA MARIE had been taken from its berth and taken on pleasure cruises in the C&D canal on several occasions between 1999 and February 2003, including the summer before.

    i.     Between 8:00 am and 10:00 am on February 4, 2003, the vessel sank in its berth.

    j.     The cause of the vessel sinking was the icebreaking operations of defendant.

    k.     Summit North Marina had received complaints from vessel owners of ice breaking in the vicinity of owners' vessels prior to this incident.

   l. A witness, David Ayers, saw the Marina employees pushing ice in the vicinity of the CHRISTINA MARIE and other vessels on the morning in question, considered it dangerous and thought it created an unreasonable risk to the moored vessels (including his own), and notified the Marina.

   m. Later in the day on February 4, 2003, David Ayers, another patron of the Marina, confronted the manager, Janice Trala, about the ice breaking activities of the Marina and the sinking of the vessel.

   n. The bubbler system in the Marina, designed and intended to prevent ice, was not turned on or was not functioning prior to the CHRISTINA MARIE sinking.

   o. The sinking occurred rapidly - one eyewitness saw the CHRISTINA MARIE sink over one foot in less than ten minutes.

   p. An October 1999 Estimate of the value of the vessel placed it at $140,000.00.

   q. Plaintiff's expert estimates the value of the vessel at the time of the sinking at $117,500 to $129,000.

   r. This estimate does not include the significant amount of personal property on board the vessel (televisions, couches, paintings), the value of which is outlined below.

   s. Pursuant to the contract, Summit North Marina had the right to require any vessel owner whose vessel was in disrepair to make repairs or remove their vessel from the Marina.

   t. No such request was made, nor was Mr. Picchi ever told the condition of his vessel was an issue at any time, whether under this contract or previous contracts.

   u. The Marina staff did nothing to abate the sinking.

   v. After the CHRISTINA MARIE sank, Ms. Trala told Mr. Picchi that he could store his vessel "up on the hill", and that he would not be charged for the storage.

   w. The contract between the parties for the slip was void after the vessel sank and the check for the dockage was returned to the plaintiff.

   x. Only after Mr. Picchi consulted an attorney was he back charged for storage via invoice.

   y. The storage invoices also included amounts not paid by the Marina, for the oil abatement. These amounts are less than as listed, due to Guardian's acceptance of the Coast Guard Fund payment.

   z. Any storage fees, salvage or oil abatement fees are a damage caused by the defendant, which costs must be born by the defendant and or its insurer.

  aa. Mr. Picchi only received a limited number of invoices for storage, i.e., March through September of 2003. Plaintiff received no further invoices after September 2003.

  bb. The true value of defendant's counterclaim, if any, is equitable and substantially smaller than alleged, as the actual charge for land storage for a year would have been approximately $2,000, and this would have included cleaning and utilities such as electricity.

  cc. Defendant made no effort to protect the vessel it was allegedly storing for plaintiff.

  **4.** **Defendant's Issues of Fact**

Defendant intends to prove that no conduct on its part caused damage to the plaintiff's vessel.

  **5.** **Plaintiff's Issues of Law**

   a. **Plaintiffs Statement Of The Law Of Negligence and Damages**

The law of negligence in Admiralty actions was recently set forth in *Galentine v. Estate of Stekervetz, 273 F. Supp. 2d 538, 2003 U.S. Dist. LEXIS 12781 (D. Del. 2003)*:

> " . . .this case arises under the admiralty jurisdiction of the Court pursuant to 28 U.S.C. § 1333 (D.I. 95). The substantive law applicable in cases of admiralty jurisdiction is federal law. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 3 L. Ed. 2d 550, 79 S. Ct. 406 (1959).
>
> Under general federal maritime law, negligence is an actionable wrong. Leathers v. Blessing, 105 U.S. 626, 26 L. Ed. 1192 (1882). In order to prevail on a claim of maritime negligence a plaintiff must prove that there was: 1) a duty of care which obliges the person to conform to a certain standard of conduct; 2) a breach of that duty; 3) a reasonably close causal connection between the offending conduct and the resulting injury; and 4) actual loss, injury, or damages suffered by the Plaintiff. 1 Thomas Schoenbaum, Admiralty and Maritime Law § 5-2 at 170 (3d ed. 2001) (footnotes omitted).
>
> Generally, in admiralty, the duty of care may be derived from: 1) duly enacted laws, regulations, and rules; 2) custom; or 3) the dictates of reasonableness and prudence. See Pennsylvania R. Co. v. The Marie Leonhardt, 202 F. Supp. 368, 375 (E.D. Pa. 1962), aff'd, 320 F.2d 262 (3d Cir. 1963). Ultimately, the basic duty of care is reasonable care under the particular circumstances. Admiralty and Maritime Law, supra, § 5-2 at 170.

{2188.00001:PJM0138}

Plaintiff contends that Summit North Marina had a duty to act reasonably and prudently in conducting its icebreaking operations, and that its failure to do so caused the plaintiff damages, as is outlined herein.

Additionally, plaintiff believes that having caused the sinking of the CHRISTINA MARIE, defendants had an obligation under the circumstances to a) take some action to prevent its sinking, and b) to protect the vessel once it was brought ashore, during the time it was allegedly being "stored".

Federal maritime law embodies a system of "pure" comparative negligence.  See Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 431, 59 S. Ct. 262, 266 (1939) ("Under [the admiralty doctrine of comparative negligence] contributory negligence, however gross, is not a bar to recovery but only mitigates it."); Sosebee v. Rath, 893 F.2d 54, 55 n.2 (3d Cir. 1990) ("Admiralty law allows for pure comparative negligence . . . ."); cf. The Max Morris v. Curry, 137 U.S. 1, 14-15, 11 S. Ct. 29, 33 (1890).

As for the proper apportionment of percentage of fault in admiralty cases, the United States Supreme Court set forth the standard in United States v. Reliable Transfer Co., 421 U.S. 397, 95 S. Ct. 1708, 44 L. Ed. 2d 251, 1975 U.S. LEXIS 151, 1975 A.M.C. 541 (1975):

> "We hold that when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault, and that liability for such damages is to be allocated equally only when the parties are equally at fault or when it is not possible fairly to measure the comparative degree of their fault."

Plaintiff contends that no action of the plaintiff was causative of the sinking of the vessel, and that even if the Court were to find some percentage of fault on behalf of plaintiff, it would and should be minimal.

The general rule in admiralty is that a prevailing party may recover pre-judgment interest except where equitable considerations make the award unconscionable. <u>Del. River Tow, LLC v. Nelson</u>, 382 F. Supp. 2d 710, 2005 U.S. Dist. LEXIS 10857 (E.D. Pa. 2005), <u>citing</u> <u>Inland Tugs Co. v. Ohio River Co.</u>, 709 F.2d 1065, 1074-75 (6th Cir. 1983).

Further, a prevailing party is entitled to its costs in Federal Court. D.Del.LR 54.1.

    b.    **Defendant's Issues of Law**

The proper of damages to plaintiff's boat is value of the boat immediately before the loss and the value after the loss. Stuart v. Rizzo, 242 A.2d 477 Del. 1968.

    c.    **Plaintiff's Legal Defenses to Counterclaim**

Plaintiff invokes the affirmative legal defenses of failure of consideration, release, failure of formation, unconscionability, and *ultra vires*. Plaintiff also asserts that the contract was voided by the parties, and replaced by a subsequent agreement, when the check was returned and Mr. Picchi was told by the manager that he could store the vessel at the marina without charge.

Further, as defendants were the cause of the damages, and not plaintiff, defendants are liable to themselves for the storage fees, i.e., and such damages should beaded to the plaintiff's damages claim.

Finally, any storage fees assessed must be reduced to there true value, as identified in discovery, and by defendants failure to mitigate the damages, and also by the failure to forward invoices after September of 2003.

**6.    Witnesses**

    a.    **Plaintiff's Witnesses**

Some of these witnesses may not be necessary depending upon defendant's potential stipulation to certain aspects of damages, and the reading of certain portions of depositions.

        i.    John Picchi, 83 Forest Lane, Carneys Point, NJ 08069;

        ii.        Christina Picchi, 83 Forest Lane, Carneys Point, NJ, 08069;

        iii.       David Ayers, Fort Pierce, FL[1];

        iv.       Janice Trala (as of Cross), c/o defendant, 3000 Summit Harbor Place, Bear, DE 19701;

        v.        Keith King (as of Cross), c/o defendant, 3000 Summit Harbor Place, Bear, DE 19701;

        vi.       Chris Lloyd (as of Cross), c/o defendant, 3000 Summit Harbor Place, Bear, DE 19701;

        vii.      Ben Bauer (as of Cross), c/o defendant, 3000 Summit Harbor Place, Bear, DE 19701;

        viii.     Debbie Davis; 106 Smug Harbor Way, Earleville, MD, 21919;

        ix.       J.R. Rinker, Bohemian Anchorage, Inc. 1707 Gleebe Road, Earleville, MD, 21919;

        x.        James McCarthy, C Port, P.O. Box 201 Chesapeake City, MD, 21915, involved in the salvage;

        xi.       Paul Murphy, P.O. Box 106 Summit North Marina, Kirkwood, DE, 19708;

        xii.      Frank Finigaglio, 124 Quaker Road, Pennsville, NJ 08070;

        xiii.     Ronald Mayor, 269 N. Virginia Ave., Carney's Point, NJ 08069;

        xiv.     Thomas Hill, 33 Silverlake Rd., Salem, NJ, 08079;

        xv.      Charles and Jeannette Spencer, 35 Maplewood Ave., Carney's Point, NJ;

        xvi.     Howard & Silvia Nixon, 418 Fern Avenue, The Villas, NJ, 08251.

    b.    **Defendant's Witnesses**

        i.        Darrell Baker, c/o defendant;

        ii.       Keith King, 707 N. Brownleaf Road, Newark, DE 19713;

        iii.       Benjamin Bauer, Jr., 27 Summerfield Lane, New Castle, DE;

---

[1] Plaintiff is currently obtaining an updated address for Mr. Ayers.

     iv.  Christopher Lloyd, 318 White Plains Drive, Middletown, DE 19709;

     v.  Charles Graves, P.O. Box 36, Kirkwood, DE;

     vi.  Deborah Davis, 106 Snug Harbor Way, Earlesville, MD;

     vii.  Jonathan Klopman, expert, 113 Stevens Way, West Cape May, NJ 08204;

     viii.  Daniel K. Ratherford, expert, 113 Stevens Way, West Cape May, NJ 08204.

  **7.**  **Expert Witnesses/Opinion Testimony**

    a.  **Plaintiff's Expert**

     i.  Jack Horner, Marine Survey and Design Company, 1291 B Lavall Drive, Davidsonville, MD 21035. Mr. Horner is a Naval Architect, and a Certified Marine Surveyor who surveyed the vessel after it was raised. Mr. Horner will give the opinions that:

      (1)  The vessel's machinery, systems and furnishings were all destroyed, and there was severe damage to the interior and exterior finishings, bulkhead coverings, and overhead liners, as a result of the sinking of the vessel.

      (2)  There was damage to and distortion of the hull and plankings (but no puncture), destruction of the railings, breaking of windows, ports and doors, and tearing or plastic and acrylic covers due to the raising of the vessel.

      (3)  The hole in the transom is consistent with ice being forced into the transom during ice breaking operations.

      (4)  The transom was over 1" thick mahogany, backed be white oak frames and marine plywood battens, which were acceptable materials.

      (5)  There was no evidence of structurally significant deterioration of the hull or transom planking considering the vessel area of use.

      (6)  A survey of similar vessels showed that a reasonable approximation of the vessel's pre-loss value was $117,500 to $129,500.

    b.  **Defendant's Experts**

     i.  Jonathan Klopman, expert, 113 Stevens Way, West Cape May, NJ 08204;

     ii.  Daniel K. Ratherford, expert, 113 Stevens Way, West Cape May, NJ 08204.

8.  **Exhibits**

    a.  **Plaintiff's Exhibits**

        i.    Summit North Marina Dock System Map;

        ii.   Summit North Marina Security Reports;

        iii.  Photographs of Debbie Davis. Exhibits 3 a. - 3 unknown; expecting to receive shortly. Some or all were believed to be attached to plaintiff's Rule 26 response/expert report;

        iv.   Wunderground weather reports/NOAA weather reports for February 3 and February 4, 2003;

        v.    Defendant's Answers to Interrogatories and Requests for Production of Documents;

        vi.   Videotape of the vessel during and after the raising of the vessel form the berth;

        vii.  Piece of marine plywood removed from transom area by divers in order to stuff a pillow in the holes, so that the vessel could be raised;

        viii. a. - f. Photos from damages survey taken by Jack Horner;

        ix.   Package of receipts for personal items and appurtenances of the vessel;

        x.    Pre-loss survey of ACT for value of the vessel;

        xi.   Photos - vessel prior to loss (previously identified as 1a-b through 13a);

        xii.  Photos - Post incident (previously identified as 14a-b through 33a-b);

        xiii. C-Port Salvage agreement;

        xiv.  Guardian bill for oil abatement and associated documents;

        xv.   Coast Guard Notices and U.S. Department of Treasury Notices re: oil abatement debt;

        xvi.  DNREC invoice;

        xvii. Copy of returned slip fee check;

        xviii. NAS Insurance Group Subpoena response;

Some or all these exhibits, especially photos, may be enlarged as demonstrative evidence. Additionally, documents relating to evidence may be summarized on a list or schedule for reference.

    b.    **Defendant's Exhibits**

        i.    There are numerous photographs showing the damage to plaintiff's property. Defendant anticipates placing all the photographs into evidence.

        ii.    Photographs taken by Deborah Davis.

        iii.    Diagram of Marina.

        iv.    Defendant's invoice for storing of the plaintiff's vessel.

**9.    Depositions**

Plaintiff expects to read portions of the following depositions into the record:

    a.    Keith King;

    b.    Janice Trala;

    c.    Benjamin Bauer;

    d.    Chris Lloyd;

    e.    Debbie Davis;

**10.    Motions *in Limine***

    a.    Plaintiff and Defendant have no Motions *in Limine* at this time.

**11.    Damages**

    a.    Plaintiffs:

        i.    Vessel:    up to $129,500

        ii.    Appurtenances:    $31,500

        iii.    C-Port Salvage:    $15,812.50

        iv.    DNREC:    $330

        v.    U.S. Dept. of Treasury:    $30,663.79

12. **Post Trial Briefing Schedule**

Post-Trial Findings of Fact, Conclusions of Law, and Memorandum for both parties by February 22, 2008; Responses if any by March 7, 2008.

13. **Settlement Status**

The parties concluded a mediation without settlement.  Plaintiff is open to further discussion, including the assistance of the court.  Defendant is in consultation on the settlement issues and will advise.

14. **Discovery Yet To Be Completed**

   a. **Plaintiff's discovery:**

   i. Deposition of Debbie Davis, to authenticate photos, if necessary.

   b. **Defendant's discovery:**

   i. None anticipated.

This Order shall control the subsequent course of the action unless modified by the Court to prevent manifest injustice.

| | |
|---|---|
| **HOLLSTEIN KEATING CATTELL JOHNSON & GOLDSTEIN, P.C.** | **CASARINO, CHRISTMAN & SHALK** |
| By: /s/Lynne M. Parker (No. 2811)<br>Lynne M. Parker, Esq. (local counsel)<br>1201 N. Orange Street, Suite 730<br>Wilmington, Delaware 19801<br>Phone #: (302) 884-6700<br>Fax #: (302) 573-2507  and | /s/ Stephen P. Casarino Del. Bar #174<br>STEPHEN P.CASARINO<br>800 King Street, Suite 200<br>P.O. Box 1276<br>Wilmington, DE 19899<br>(302) 594-4500 |
| Edward V. Cattell, Esquire *pro hac vice*<br>Patrick J. McStravick, Esquire *pro hac vice*<br>1628 John F. Kennedy Boulevard - Suite 2000<br>Philadelphia, PA 19103<br>(215) 320-3260<br>Fax  (215) 320-3261<br>Attorneys for Plaintiff<br>John B. Picchi   (lead counsel) | Attorney for Defendant<br>Summit North Marina<br><br><br><br><br><br>Date: December 21, 2007 |

_____
UNITED STATES DISTRICT JUDGE

Date: _____

{2188.00001:PJM0138}